UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAVE LONG BEACH ISLAND, a nonprofit corporation, P.O. Box 579, Ship Bottom, NJ 08008; ROBERT STERN, Ph.D., an individual; FRANK AND NANCY PINO, individuals; BROOKS GARRISON, an individual; RICH AND GWYN GABALY, individuals; DEE WARD, an individual; and LORI GOLDSCHMIDT AND CLAY GOLDSCHMIDT, individuals,<br><br>        Plaintiffs,<br><br>v.<br><br>ATLANTIC SHORES OFFSHORE WIND, LLC,<br><br>        Defendant. | Civil Action No. 24-9377-ZNQ-RLS<br><br>Hon. Zahid N. Quraishi, U.S.D.J.<br>Hon. Rukhsanah L. Singh, U.S.M.J. |

**BRIEF OF DEFENDANT ATLANTIC SHORES OFFSHORE WIND, LLC REGARDING THE OUTER CONTINENTAL SHELF LANDS ACT AND <u>PARKER DRILLING MANAGEMENT SERVICES LTD. V. NEWTON</u>**

Steven T. Senior
Edwin F. Chociey, Jr.
Diane N. Hickey
Michael S. Kettler
**RIKER DANZIG LLP**
7 Giralda Farms, Suite 250
Madison, NJ 07940-1051
(973) 538-0800
Attorneys for Defendant,
Atlantic Shores Offshore Wind, LLC
ssenior@riker.com; echociey@riker.com;
dhickey@riker.com; mkettler@riker.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT.................................................................................................................1

A.    Plaintiffs' state law claims should be dismissed under OCSLA because they are inconsistent with federal law, such that there is no "gap" in the comprehensive federal regulatory framework governing offshore wind. ...................................................................1

B.    The Complaint fails to state a claim under New Jersey law. .................9

CONCLUSION..................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                        **Page(s)**

Kurns v. R.R. Friction Prods. Corp.,
    565 U.S. 625 (2012) ...........................................................................................8

Parker Drilling Management Services Ltd. v. Newton,
    587 U.S. 601 (2019) ...................................................................................*passim*

Protect our Cmtys. Found. v. Jewell, No. 13CV575,
    2014 U.S. Dist. LEXIS 50698 (S.D. Cal. Mar. 25, 2014) ...............................5

S.C. Coastal Conservation League v. Ross,
    No. 2:18-3326-RMG, 2020 U.S. Dist. LEXIS 263378 (D.S.C. Feb. 18,
    2020) ...............................................................................................................8, 9

Ten Taxpayer Citizens Group v. Cape Wind Associates, LLC,
    373 F.3d 183 (1st Cir. 2004) ....................................................................6, 7, 8

**Statutes**

42 U.S.C. § 4332 .......................................................................................................5

43 U.S.C. § 1331 ...................................................................................................1, 3

43 U.S.C. § 1332 .......................................................................................................4

43 U.S.C. § 1333 ...........................................................................................1, 2, 6, 9

43 U.S.C. § 1337 ....................................................................................................4, 9

43 U.S.C. § 1340 .......................................................................................................8

**Regulations**

30 C.F.R. § 585.620 .................................................................................................4

30 C.F.R. § 585.621 .................................................................................................4

30 C.F.R. part 551 ...........................................................................................................8

30 C.F.R. part 585 ...........................................................................................................9

## PRELIMINARY STATEMENT

Defendant Atlantic Shores Offshore Wind, LLC ("Atlantic Shores") submits this brief in response to the Court's text Order dated August 27, 2025, see ECF No. 24, which directed the parties to submit briefs regarding the interplay between state law claims, like those in Plaintiffs' Complaint, and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 et seq., as applied in Parker Drilling Management Services Ltd. v. Newton, 587 U.S. 601 (2019) ("Parker Drilling").

Because federal law is exclusive over the outer continental shelf ("OCS") under OCSLA, there is no role for state law to fill with respect to Atlantic Shores' offshore wind activities on the OCS, and Plaintiffs' Complaint should be dismissed.

## ARGUMENT

**A.    Plaintiffs' state law claims should be dismissed under OCSLA because they are inconsistent with federal law, such that there is no "gap" in the comprehensive federal regulatory framework governing offshore wind.**

The United States owns the submerged lands of the OCS that are located greater than three miles from the coastline of the nearest adjacent state. See Parker Drilling, 587 U.S. at 606; see also 43 U.S.C. § 1333(a)(1)(A) ("The Constitution and laws and civil and political jurisdiction of the United States are extended, to the same extent as if the [OCS] were an area of exclusive Federal jurisdiction located within a State" to, among other things, "installations and other devices … attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing … energy resources"). Atlantic Shores' Lease Area is located here.

1

Notwithstanding the federal government's exclusive authority and jurisdiction over the OCS, OCSLA allows state laws to apply there in limited circumstances:

> To the extent that they are <u>applicable and not inconsistent with</u> this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil … laws of each adjacent State … are declared to be the law of the United States for that portion of the subsoil and seabed of the [OCS], … and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the OCS….

43 U.S.C. § 1333(a)(2)(A) (emphasis added). OCSLA makes clear, however, that this provision for the "adoption of State law as the law of the United States shall never be interpreted as a basis for claiming any interest in or jurisdiction on behalf of any State for any purpose over the seabed and subsoil of the [OCS] …." 43 U.S.C. § 1333(a)(3).

In <u>Parker Drilling</u>, the Supreme Court interpreted OCSLA's "applicable and not inconsistent" provision. In this case, the plaintiff, Newton, an employee of defendant Parker Drilling on an offshore oil platform on the OCS, had asserted claims for violation of California wage and hour laws. <u>Parker Drilling</u>, 587 U.S. at 605. Parker Drilling argued that Newton's state law claims should be dismissed because California wage and hour laws did not satisfy the "applicable but not inconsistent" standard under OCSLA. The Court agreed.

Because OCSLA applies federal law to the OCS "to the same extent as if the [OCS] were an area of exclusive Federal jurisdiction located within a State," the

2

Court explained that "the only law on the OCS is federal law." Id. at 609 (citing 43 U.S.C. § 1331(a)(1)). "Federal law is exclusive in its regulation of the OCS" and state law may be adopted and apply under OCSLA "only as surrogate federal law." Id. at 610 (citing Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352, 357 (1969)).

Therefore, the Court held that state law applies on the OCS only if it is needed to fill a gap in federal law: "if a federal law addresses the issue at hand, then state law is not adopted as federal law on the OCS." Id. at 616. Applying that standard, the Court recognized that federal law already addresses payment for standby time— it is not required under federal law—and federal law also already provides a minimum wage, albeit at a lower level than California law. Id. at 616-17. Accordingly, the Court held that Newton could not rely on California law requiring payment for standby time or the California minimum wage.

Here, Plaintiffs' Complaint attempts to apply New Jersey state law—the common law of nuisance and various municipal ordinances adopted under the auspices of state law—to the issue of noise generated by Atlantic Shores' offshore wind facility on the OCS. ECF No. 1-1, Exh A., ¶¶ 76-103. The Complaint seeks an injunction preventing Atlantic Shores from building its Projects and damages for nuisance in the form of a fund to compensate certain Plaintiffs for alleged property value losses. Id. ¶¶ 98, 102.

3

These claims cannot meet the "applicable and not inconsistent" OCSLA standard under Parker Drilling because federal law addresses the health and safety impacts of the construction and operation of offshore wind projects on the OCS, leaving no room for the application of state law to regulate noise. The federal government has the exclusive authority to approve development of the OCS. 43 U.S.C. § 1332(1) ("the subsoil and seabed of the [OCS] appertain to the United States and are subject to its jurisdiction, control, and power of disposition"). Congress has authorized the Department of Interior to lease the OCS for the development of offshore wind energy, among other uses. 43 U.S.C. § 1337(p)(1)(C). In implementing this authority, OCSLA requires the Secretary of Interior to "ensure that any activity … is carried out in a manner that provides for … safety [and] protection of the environment." 43 U.S.C. § 1337(p)(4)(A)-(B).

Under OCSLA's implementing regulations, the Bureau of Ocean Energy Management ("BOEM") must approve the lessee's construction and operations plan ("COP") before it can begin its activities to generate wind energy on the OCS. 30 C.F.R. § 585.620(c). The lessee's COP should demonstrate that its proposed use "does not cause undue harm or damage to natural resources; life (including human and wildlife); property; [or] the marine, coastal, or human environment…." 30 C.F.R. § 585.621(e). Finally, the National Environmental Policy Act ("NEPA") also requires the federal government to consider the "reasonably foreseeable

environmental effects of the proposed agency action" for each major federal action significantly affecting the quality of the human environment. 42 U.S.C. § 4332(C)(i). It is well established that reasonably foreseeable environmental effects under NEPA include noise. See, e.g., Protect our Cmtys. Found. v. Jewell, No. 13CV575, 2014 U.S. Dist. LEXIS 50698, at *23-35 (S.D. Cal. Mar. 25, 2014) (upholding NEPA analysis of noise from land based wind turbines).

Indeed, here, and as Atlantic Shores demonstrated in its prior briefs in support of its motion to dismiss, the federal government determined to lease an area on the OCS to Atlantic Shores for its offshore wind development, subject to federal review and approval. As part of this review, the federal government conducted a comprehensive review under the federal regulatory scheme governing offshore wind development and expressly found that Atlantic Shores' Projects will have no adverse noise impacts to people onshore. As BOEM found in its Final Environmental Impact Statement,

> As the Proposed Action would be built 8.7 miles … offshore, noise effects from offshore construction noise would be short term and negligible. At a distance of 1,000 feet (305 meters), the sound pressure is on the order of 50 dBA, a level lower than normal conversation…. In this case, operational noise from the offshore WTGs [i.e., wind turbine generators] would not be audible onshore.

ECF No. 19-2, Exh. G, at 3.6.5-10. In addition, Atlantic Shores' COP analyzed onshore noise impacts and concluded that "onshore noise from offshore activities will be negligible." ECF No. 19-2, Exh. C, at 8-13. BOEM has approved the COP.

5

ECF No. 19-2, Exhs. H & I.[1] Plaintiffs' Complaint asks this Court to find new facts that contradict BOEM's fact-finding in its lengthy review of the Projects and rely on Plaintiffs' requested alternative fact-finding to prohibit the activities the federal government has approved. This proposed use of state law is inconsistent with federal law under OCSLA, so the Complaint should be dismissed.[2]

Both before and after Parker Drilling, federal courts consistently have held that state law would be inconsistent with federal law and therefore that state law cannot be applied to the OCS where a plaintiff attempts to use state law to enjoin a federally permitted activity. In Ten Taxpayer Citizens Group v. Cape Wind Associates, LLC, 373 F.3d 183, 185-87 (1st Cir. 2004), objectors to a proposed offshore wind facility off the coast of Nantucket filed a complaint in state court seeking to enjoin construction of a temporary tower on the OCS that would be used

---

[1] In support of its initial motion to dismiss, Atlantic Shores argued that the Complaint is subject to conflict preemption because of these federal agency findings. See ECF No. 19-1, at 15-20; ECF No. 21, at 6-8. The Supreme Court in Parker Drilling held that the application of state law could be precluded under OCSLA even if that state law would not be subject to conflict preemption. Parker Drilling, 587 U.S. at 617. A fortiori, where conflict preemption would preclude Plaintiffs' claims, as it would here, those state law claims manifestly would be inconsistent with federal law under OCSLA and thus be subject to dismissal under 43 U.S.C. § 1333(a)(2)(A).

[2] Notably, Plaintiff Save Long Beach Island has filed a separate lawsuit alleging, among other things, that federal agencies violated OCSLA in approving Atlantic Shores' Projects and asking the U.S. District Court for the District of Columbia to set aside BOEM's approval of the COP. Save Long Beach Island, Inc. et al. v. U.S. Dep't of Commerce et al., No. 1:25-cv-02211 (D.D.C.). This litigation under federal law is Plaintiffs' only avenue for relief, and there is no gap for state law to fill.

to collect data for future construction of the larger offshore wind facility. The plaintiff objectors alleged that Cape Wind was required to obtain a permit from Massachusetts before constructing the tower. Id. Cape Wind had obtained a federal permit from the U.S. Army Corps of Engineers. Id. Cape Wind removed the case to federal court, and the First Circuit affirmed the dismissal of the complaint because the state permitting requirement could not be applied to the OCS under OCSLA. The court observed that OCSLA "establishes nationwide rules for the leasing and development of natural resources in the seabed outside of state territory," and it is "a sweeping assertion of federal supremacy over the submerged lands outside of the three-mile [Submerged Lands Act] boundary." Id. at 188. Accordingly, the court emphatically rejected the application of a state permitting regime to the OCS:

> [T]he OCSLA leaves no room for states to require licenses or permits for the erection of structures on the seabed on the [OCS]. Congress retained for the federal government the exclusive power to authorize or prohibit specific uses of the seabed beyond three miles from shore. If adopted and enforced on the [OCS], [a state statute] requir[ing] the approval of state agencies prior to construction, would effectively grant state governments a veto power over the disposition of the national seabed. That result is fundamentally inconsistent with the OCSLA.

Id. at 196-97 (citations omitted) (emphasis added).³ Here, Plaintiffs are attempting to use state common law and local ordinances as a veto over federally-approved OCS

---

³ Although Ten Taxpayer predates Parker Drilling, it is consistent with Parker Drilling and remains good law. The basis for each decision is the exclusive federal control and jurisdiction over the OCS. Ten Taxpayer Citizens Grp., 373 F.3d at 196-97; Parker Drilling, 587 U.S. at 609-10.

7

activities, which is equally impermissible under OCSLA.[4]

In a similar later case citing Parker Drilling, the U.S. District Court for the District of South Carolina held that state common law claims, including nuisance, cannot be asserted against federally authorized activities on the OCS. S.C. Coastal Conservation League v. Ross, No. 2:18-3326-RMG, 2020 U.S. Dist. LEXIS 263378 (D.S.C. Feb. 18, 2020). In that case, South Carolina asserted state common law nuisance and trespass claims in an attempt to halt seismic air gun surveys for oil and gas on the OCS authorized under an incidental harassment authorization from the National Marine Fisheries Service. Id. at *8-9. OCSLA and its implementing federal regulations contemplate that geological and geophysical exploration for oil and gas resources may occur on the OCS and establishes a federal regulatory framework to govern those activities. See, e.g., 43 U.S.C. § 1340; 30 C.F.R. part 551 (establishing a federal permitting program for geological and geophysical exploration of the OCS). In this context, the court concluded that state common law claims did not apply to the surveying activities that the federal government regulated and approved for the OCS: "it is apparent that the OCSLA establishes the law of the OCS and addresses issues regarding the regulation of the OCS. South Carolina may not assert

---

[4] That Plaintiffs' common law claim seeks damages as well as injunctive relief cannot save that aspect of the claim. "[S]tate regulation can be effectively exerted through an award of damages, and the obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." Kurns v. R.R. Friction Prods. Corp., 565 U.S. 625, 637 (2012) (citations omitted).

state common law claims that address areas regulated by federal statutory law." S.C. Coastal Conservation League, 2020 U.S. Dist. LEXIS 263378, at *15. Here, too, OCSLA regulates offshore wind generation projects, including Atlantic Shores' projects, and establishes a federal regulatory framework to govern those activities. See, e.g., 43 U.S.C. § 1337(p)(1)(C); 30 C.F.R. part 585 (establishing a federal program for leasing OCS areas for renewable energy production and providing for federal approval of, among other things, a construction and operations plan before energy production activities can begin). Just as OCSLA did not permit South Carolina to assert state common law nuisance claims for federally-approved activities on the OCS, plaintiffs here may not assert state common law nuisance claims (or analogous claims under municipal codes) for Atlantic Shores' federally-approved activities on the OCS. As the South Carolina court found, to allow state law to halt federally-approved activities on federally-owned submerged lands of the OCS would be "inconsistent" with federal law. 43 U.S.C. § 1333(a)(2)(A).

**B.     The Complaint fails to state a claim under New Jersey law.**

Assuming arguendo that state law would apply under OCSLA, Atlantic Shores' prior briefing demonstrates that the Complaint fails to state a claim under New Jersey law. That is, New Jersey does not recognize a common law claim for "anticipatory" nuisance where the future activity giving rise to the claim is not a nuisance per se. ECF No. 19-1, at 28-31; ECF No. 21, at 12-15. Further, the

9

Municipal Land Use Law does not give Plaintiffs a private right of action under the Beach Haven and Long Beach noise ordinances, and the Brigantine zoning ordinance does not apply to Atlantic Shores' activities on the OCS outside of Brigantine's jurisdiction. ECF No. 19-1, at 23-28; ECF No. 21, at 10-12. The Complaint should be dismissed even if OCSLA did not bar Plaintiffs' state law claims.

## CONCLUSION

For the reasons set forth herein, or alternatively for the reasons set forth in Atlantic Shores' briefs in support of its original motion to dismiss dated January 27, 2025, Atlantic Shores respectfully requests that the Complaint be dismissed with prejudice.

Respectfully submitted,

RIKER DANZIG LLP
Attorneys for Defendant
Atlantic Shores Offshore Wind, LLC

By:  /s/ Steven T. Senior
       Steven T. Senior

Dated: September 19, 2025

4915-4841-3287, v. 8