Thomas Stavola, Jr., Esq.
NJ Bar ID number: 380012022
Law Office of Thomas Stavola Jr. LLC
209 County Road 537
Colts Neck, NJ 07722
tstavolajr@stavolalaw.com
732-539-7244
*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAVE LONG BEACH ISLAND, a nonprofit corporation, P.O. Box 579, Ship Bottom, NJ 08008; ROBERT STERN, Ph.D., an individual; FRANK AND NANCY PINO, individuals; BROOKS GARRISON, an individual; RICH AND GWYN GABALY, individuals; DEE WARD, an individual; And, LORI GOLDSCHMIDT AND CLAY GOLDSCHMIDT, individuals<br><br>Plaintiff(s),<br><br>v.<br><br>ATLANTIC SHORES OFFSHORE WIND, LLC<br><br>Defendant(s). | Civil Action No. 24-9377-ZNQ-RLS<br><br>Hon. Zahid N. Quraishi, U.S.D.J.<br>Hon. Rukhsanah L. Sing, U.S.M.J.<br><br><br><br><br><br><br><br><br><br><br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER DIRECTING ANALYSIS OF SUPREME COURT PRECEDENT** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................3

CONCLUSION ...................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

AEP v. Connecticut, 564 U.S. 410 (2011) .................................................................6

Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473 (1981)....................................5

Ill. v. Milwaukee, 406 U.S. 91 (1972) ......................................................................6

Parker Drilling Management Services Ltd. v. Newton, 587 U.S. 601 (2019)...........1

Roberts v. Sea- Land Services, Inc., 566 U. S. 93, 101 (2012) ................................4

Rodrigue v. Aetna Cas. & Sur. Co., 395 U.S. 352 (1969) .........................................3

**Statutes**

42 U.S.C. 1331 .........................................................................................................1

43 U.S.C. 1333(a)(2)(A) ...........................................................................................3

## INTRODUCTION

On August 27, 2025, the Court issued a text order directing the Parties to file supplemental briefs addressing relevant and controlling authority from the United States Supreme Court regarding the interplay between state law claims and the Outer Continental Shelf Lands Act, 42 U.S.C. 1331, et seq., specifically citing <u>Parker Drilling Management Services Ltd. v. Newton</u>, 587 U.S. 601 (2019). Plaintiffs submit that this Supreme Court case and its concomitant authorities do not alter the conclusion in Plaintiffs' Opposition to Defendants' Motion to Dismiss, namely, that Plaintiffs' state-based claims fail to be preempted. As elucidated by the Supreme Court, the question of whether a claim predicated in state law is preempted turns on whether federal law addresses the relevant issue. Insomuch as federal law does not address the relevant issue, then there is a gap to be filled by the law of the adjacent state.

The doctrinal preemption tenets of express and implied preemption, including conflict (impossibility of compliance, poses an obstacle) and field preemption, are not overruled or belied by <u>Parker Drilling</u>. Rather, <u>Parker Drilling</u> analyzes preemption in the context of Outer-Continental Shelf federal jurisdiction more narrowly, injecting refinements to the overall preemption analysis. While all "law" on the Outer-Continental Shelf is "federal" due to the exclusivity of federal

1

jurisdiction, state law can be borrowed and employed as surrogate federal law where federal law fails to address the relevant issue.

Here, Plaintiffs present a clear case wherein state law can and should apply as surrogate federal law, in view of the apparent gap that exists in federal law. Defendants cannot cite to a federal statute, regulation, or common law that addresses the specific issue of onshore noise from an offshore source on the Outer-Continental Shelf generating property-based nuisance claims (unreasonable interference with the use and enjoyment of one's land through disruptions to health and comfort). And to the extent BOEM analyzed the impact of Atlantic Shores' potential noise generation at all, such analysis failed to the address the specific issues here, as described fully *infra*. Nor is there any federal statute, regulation, or common law that prescribes an upper limit for noise magnitude on the property of a New Jersey town (see *infra*).

Therefore, the <u>Parker Drilling</u> case's refined preemption analysis – as it relates to state law-based claims eventuating from OCS activities here – does not obviate Plaintiffs claims. In fact, the case further buttresses Plaintiffs' argument that their claims should survive preemption.

2

# ARGUMENT

The Supreme Court in <u>Parker Drilling Management Services Ltd. v. Newton</u>, 587 U.S. 601 (2019) elucidates the question of state law-based claims within the context of federal jurisdiction on the Outer-Continental Shelf ("OCS"). While the Federal Government's exclusive "control" over the OCS - established and reaffirmed through numerous cases – is incontrovertible, the question of the precise conditions under which state law applies on the OCS was further refined and clarified in <u>Parker Drilling</u>. The Court's holding is not inconsistent with the federal-enclave model set forth in <u>Rodrigue v. Aetna Cas. & Sur. Co.</u>, 395 U.S. 352 (1969), and the historical import of the Outer Continental Shelf Lands Act ("OCSLA"). The pertinent OCSLA provision at 43 U.S.C. 1333(a)(2)(A) provides:

> "To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf . . ."

The <u>Parker Drilling</u> Court applied canons of statutory construction, especially that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme'" <u>Roberts v. Sea- Land Services, Inc.</u>, 566 U. S. 93, 101 (2012). The Court distilled the phraseology "applicable and not

3

inconsistent" in 43 U.S.C. 1333(a)(2)(A) as meaning state law is adopted as surrogate federal law when federal law **fails to address the relevant issue**. In other words, insomuch as federal law applies to an issue, state law is displaced and inapplicable, and conversely, where there is a **gap or void** to fill, state law can apply.

The fact pattern in <u>Parker Drilling</u> involved a situation wherein federal law unequivocally addressed the relevant issue. The Respondent Brian Newton worked for petitioner Parker Drilling Management Services on drilling platforms on the OCS off the coast of California. Newton was remunerated for his time on duty but was not paid for his standby time. Many of Newton's claims were predicated on California law, which required payment for the standby time. But federal law already existed and addressed that particular issue, as described by the Court therein:

> "[F]ederal law already addresses this issue. See *29 CFR §785.23 (2018)* ("An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises"); see also *29 U. S. C. §207(a)*. Therefore, this California law does not provide the rule of decision on the OCS, and to the extent Newton's OCS-based claims rely on that law, they necessarily fail."

As per the Court, the pivotal inquiry under the OCSLA was whether federal law addressed the minimum wage on the OCS, which it unambiguously did. There was thus no "gap" for state-law to occupy since federal law addressed standby time payment.

4

The instant case currently before this Court is disharmonious with the fact pattern of Parker Drilling and more analogous to Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473 (1981). In Gulf Offshore, an employee of the drilling company was injured while working on an oil drilling platform on the OCS, and he brought a suit for damages alleging negligence by the oil company and boat owner. The Court therein held that federal courts do not have exclusive jurisdiction over personal injury and indemnity cases under OCSLA. Concordant with Parker Drilling, inasmuch as "gaps" exist in federal law, the applicable law of the adjacent state can apply:

> "All law applicable to the Outer Continental Shelf is federal law, but to fill the substantial 'gaps' in the coverage of federal law, OCSLA borrows the 'applicable and not inconsistent' laws of the adjacent States as surrogate federal law . . . Nothing inherent in exclusive federal sovereignty over a territory precludes a state court from entertaining a personal injury suit concerning events occurring in the territory and governed by federal law."
> Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 480-81 (1981).

Here, like Gulf Offshore Co., gaps exist in federal law such that Plaintiffs' claims can fill the void. Moreover, Plaintiffs' state-based claims of private nuisance and local New Jersey ordinance violations are consonant with the Parker Drilling Court's holding as federal law unequivocally does not address the relevant issue.

Federal law does not afford an equivalent cause of action for a New Jersey property-based nuisance claim, namely, an unreasonable interference with the use and enjoyment of one's land through disruptions to his health and comfort. Federal courts do not recognize any common law nuisance claims which would displace those property-based nuisance claims. Heretofore, federal courts recognized interstate common law nuisance claims predicated upon water or air pollution, but those common law claims were superseded by the Clean Air Act (see, AEP v. Connecticut, 564 U.S. 410 (2011)) and the Clean Water Act (Ill. v. Milwaukee, 406 U.S. 91 (1972)). Regardless, those common law claims would be inapposite even if they were not already superseded.

No federal environmental statute or regulation affords a private right of action for property based nuisance claims in New Jersey (as defined above) including the Coastal Zone Management Act,[1] the Clean Air Act, the Clean Water Act, the Marine

---

[1] Notably, the New Jersey Coastal Zone Management rules at N.J.A.C. 7:7-27.2(c)(10) require offshore energy project permittees to "employ appropriate measures to minimize noise where necessary during construction," and expressly reference the New Jersey Noise Control Act, N.J.S.A. 13:1G-1 et seq., and its

6

Mammal Protection Act, the Endangered Species Act, the National Environmental Policy Act, the OCSLA, Comprehensive Environmental Response, Compensation, and Liability Act, Marine Protection, Research and Sanctuaries Act, Resource Conservation and Recovery Act and the Noise Control Act.[2] Nor has any court

---

implementing regulations at N.J.A.C. 7:29. As explained in Footnote (2), below, while there is no private right of action under that law, it demonstrates Congress' intent to allow state law to operate in an area unregulated by federal law. State law claims can thus fill the void, such as Plaintiffs' claims here.

[2] While the Noise Control Act of 1972 includes a limited citizen suit provision, 42 U.S.C. § 4911, that section applies only to violations of narrowly defined federal "noise control requirements" set forth in §§ 4909(a), 4916–4917, or aviation-specific provisions. Plaintiffs' claims here do not implicate any such requirements. The Act defines 'noise control requirement' in a narrow manner (42 U.S.C. § 4911(f)) and no regulation or standard implementing §§ 4909, 4916 or 4917 governs offshore turbine noise or establishes onshore ambient thresholds. Thus, the statute's limited private enforcement mechanism provides no relief for the property-based harms Plaintiffs allege. Moreover, Congress expressly preserved state-law nuisance claims via 42 U.S.C. § 4911(e), and EPA enforcement under the Act has been dormant for decades. Thus, the Act does not impose any enforceable standards regarding onshore property-based nuisance nor create a private right of action for sound originating from offshore industrial activity.

See the following regarding the lack of enforcement of the federal Noise Control Act:

"In the 1970s, EPA coordinated all federal noise control activities through its Office of Noise Abatement and Control. EPA phased out the office's funding in 1982 as part of a shift in federal noise control policy **to transfer the primary responsibility of regulating noise to state and local governments** [emphasis added]." U.S. EPA, EPA History: Noise and the Noise Control Act, https://19january2021snapshot.epa.gov/history/epa-history-noise-and-noise-control-act_.html#:~:text=NOTE:%20In%20the%201970s%2C%20EPA,in%20our%20Frequent%20Questions%20database.

7

recognized a federal common law cause of action for onshore nuisance caused by offshore energy infrastructure, and Congress has not created one by statute. Under the canon *expressio unius est exclusio alterius*, where Congress has expressly provided private causes of action in some environmental statutes but not for nuisance-based claims related to onshore noise impacts from OCS projects, it is reasonable to conclude a gap exists unless state law is borrowed to fill it.

Accordingly, no federal statute or regulation addresses the relevant issue of property-based nuisance in New Jersey. In this instant case, Plaintiffs demonstrate unreasonable interference with the use and enjoyment of their land through disruptions to their health and comfort by way of excessive audible noise and infrasound which will emanate from Atlantic Shores project. Defendants averred in their Motion to Dismiss that the Bureau of Ocean Energy Management ("BOEM") analyzed the impacts of Atlantic Shores' noise on onshore locations. But as Plaintiffs underscored in their Opposition Brief (Opp. Br. at 12-17), the noise analyses involved: a) baseline/ambient sound measurements are at exclusively inland locations (Fire Road, Egg Harbor Road, Hingston Avenue East, Hingston Avenue West), notably, not along the NJ shore where Plaintiffs live, and b) assessment of

---

Note further that the New Jersey Noise Control Act (N.J.A.C. 7:29-1.7) does not provide a private right of action.

onshore – not offshore – noise sources. Moreover, BOEM's conclusion on page 3.6.5-10 of Appendix F of the Final Environmental Impact Statement (see, Opp. Br. 15) was derived from a study that only analyzed comparatively much smaller, land-based turbines of 1-3 megawatts ("MW") in power capacity (whereas for Atlantic Shores South, the Construction and Operations Plan authorize nearly 200 turbines of 15 MW in power capacity).

Therefore, no federal common law, statute, or regulation addresses the relevant issue of noise and infrasound emissions from offshore wind turbine construction and operation that cause unreasonable interference with the use and enjoyment of coastal private property. As the <u>Parker Drilling</u> Court emphasized, "The OCSLA's text and context thus suggest that state law is not adopted to govern the OCS where federal law is on point." <u>Parker Drilling Management Services Ltd.</u>, 587 U.S. at 603. Indeed, here, there is no federal law on point. Even the noise analysis conducted pursuant to NEPA was entirely inapposite to the claims averred by Plaintiffs, namely the impact of the offshore noise on the onshore Plaintiffs' use and enjoyment of their coastal properties. Thus, unlike <u>Parker Drilling</u> - where the Fair Labor Standards Act already addressed standby time and minimum wage, thereby displacing California law – here, a clear gap in federal law exists as it relates to property-based nuisance claims eventuating from offshore noise sources. It

necessarily follows that Plaintiffs' state-law based claims are not preempted and eliminated under the framework of Parker Drilling.

Likewise, there is no federal statute, regulation, or common law that affords a private right of action equivalent to the local New Jersey noise ordinance standards, which establishes an upper limit of sound exposure from wind energy systems (see, Opp. Br. 20-22). Finally, nothing herein conflicts with or belies Plaintiffs' Opposition Brief analyzing preemption principles. Parker Drilling simply refines and clarifies the preemption analysis with respect to the OCS, but even under that framework, Plaintiffs' claims survive preemption as an apparent gap in federal law exists for the claims at bar.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

Respectfully submitted,                                        Dated: September 19, 2025

*/s/ Thomas Stavola Jr. Esq.*
Thomas Stavola Jr. Esq.
*Counsel for Plaintiffs*
NJ Bar ID number: 380012022
Law Office of Thomas Stavola Jr. LLC
209 County Road 537
Colts Neck, NJ 07722
tstavolajr@stavolalaw.com
732-539-7244