<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SAVE LONG BEACH ISLAND,** *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>**ATLANTIC SHORES OFFSHORE WIND, LLC,**<br><br>Defendant. | Civil Action No. 24-9377 (ZNQ) (RLS)<br><br>**OPINION** |

<u>QURAISHI, District Judge</u>

**THIS MATTER** is a challenge to windmill developments off the coast of New York and New Jersey based on alleged harm that construction and operational noise will cause local residents.  Plaintiffs Save Long Beach Island, Robert Stern, Frank Pino, Nancy Pino, Brooks Garrison, Rich Gabaly, Dee Ward, Lori Goldschimdt, and Clay Goldschimdt (collectively, "Plaintiffs") filed suit against developer Atlantic Shores Offshore Wind, LLC ("Atlantic Shores" or "Defendant"), and seek to enjoin construction.  (ECF No. 1.)  Presently before the Court is Atlantic Shores' Motion to Dismiss or, in the alternative, to order Plaintiffs to join necessary parties.  ("Motion," ECF No. 19.)  Atlantic Shores filed a brief in support.  ("Moving Br.," ECF No. 19-1.)  Plaintiffs filed a brief in opposition ("Opp'n Br.," ECF No. 20) and Atlantic Shores filed a reply ("Reply Br.," ECF No. 21).

1

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Atlantic Shores' Motion.

## I.    BACKGROUND

This is one of many challenges to the Bureau of Ocean Energy Management's ("BOEM") approval of a plan to lease a portion of the outer continental shelf ("OCS") off the coast of New York and New Jersey, known as the New York Bight, for development of a wind energy facility pursuant to the Outer Continental Shelf Lands Act ("OCSLA").[1] *See Save Long Beach Island v. U.S. Dep't of Interior*, 663 F. Supp. 3d 1 (D.D.C March 9, 2023); *Save Long Beach Island v. U.S. Dep't of Commerce*, 721 F. Supp. 3d 317 (D.N.J. Feb. 29, 2024); *Save Long Beach Island v. U.S. Dep't of Commerce*, Civ. No. 23-1886, 2025 WL 1829543 (D.N.J. July 2, 2025). Given the parties' familiarity with renewable energy lease authorization under OCSLA and BOEM's corresponding regulatory permitting process, the Court provides only a brief background of the relevant factual history for this matter as follows.

On September 13, 2024, Plaintiffs filed a Complaint and request for a preliminary injunction in Superior Court of New Jersey, Ocean County, seeking to enjoin Atlantic Shores from constructing up to 200 wind turbines in the offshore waters of the New Jersey/New York Bight. (*See* ECF No. 1-1, Ex. A., Complaint, "Compl.", ¶¶ 2–3.) Plaintiff Save LBI[2] and the individual Plaintiffs—who are residents of Brigantine, Brant Beach, and Beach Haven, New Jersey—allege that the project violates New Jersey's Municipal Land Use Law, N.J. Stat. Ann. 40:55D-18, City

---

[1] The New York Bight is "an offshore area that extends northeast from Cape May in New Jersey to Montauk Point on the eastern tip of Long Island, New York." *Save LBI v. U.S. Department of the Interior*, 663 F. Supp. 3d 1, 4 (D.D.C March 9, 2023).

[2] Save LBI is a New Jersey 501(c)(3) non-profit corporation "created to guard human and natural resources," including but not limited to, of the New York Bight. (Compl. ¶15.) Plaintiff Dr. Robert Stern is the organization's president. (*Id.*)

of Brigantine Code § 198-127(D)(2), Borough of Beach Haven Code §134-11, and Long Beach Township Code § 123-5.  (*Id.* ¶ 3.)  Plaintiffs further assert a private nuisance claim based on disruptions to use and enjoyment of Plaintiffs' properties.  (*Id.* ¶ 22.)

According to Plaintiffs, Atlantic Shores failed to include in its Construction and Operations Plan submission to BOEM an "In-Air Noise Assessment of offshore generated noise from the project" and has therefore not met its regulatory responsibility under 30 CFR § 585.621(d) to demonstrate that the project "does not cause undue harm to . . . property; . . . or [the] human environment."  (Compl. ¶ 6.)  As a result, it conducted its own airborne noise assessment of pile driving (which occurs during the construction phase of the wind farm) and predicted noise levels at the operational phase of the project.  (*Id.* ¶ 8.)

Plaintiffs' experts, Dr. Stern and Dr. Punch of Xi Engineering, first note that adverse health effects "initiate at decibel levels as low as the 30s and increase progressively at 35-40 dBA and further at levels beyond 40 dBA."  (*Id.* ¶ 11.)  Plaintiffs' experts specifically opine, in relevant part, that noise levels from pile driving "will exceed the ordinance standards for Brigantine, NJ" and will "clear 45dBA throughout coastal Long Beach Island and Brigantine, NJ."  (*Id.* ¶ 10.)  Plaintiffs' experts further assert that operational noise levels "will easily exceed 45 dBA in the areas inhabited by Plaintiffs."  (*Id.*)  Therefore, Plaintiffs' experts conclude that the project "will result in adverse health effects in a substantial proportion of onshore residents . . . and will result in a private nuisance to Plaintiffs."  (*Id.* ¶ 11.)

On September 23, 2024, Atlantic Shores removed the matter to this Court, including its motion for a preliminary injunction.  (*See* ECF No. 1, Notice of Removal.)  On October 17, 2024, Plaintiffs withdrew their motion for a preliminary injunction, and the Court ordered Atlantic

Shores to answer, move, or otherwise respond to the Complaint within 60 days. (*See* ECF No. 12.)

On January 27, 2025, Atlantic Shores filed the instant Motion, arguing that Plaintiffs' claims are preempted by federal law and Plaintiffs otherwise fail to state a claim under New Jersey law or local ordinance. In the alternative, Atlantic Shores requests that the Court direct Plaintiff to join P1 LLC and P2 LLC (entities that hold an interest in the commercial lease awarded to Atlantic Shores by the federal government) as necessary parties in this action under Rule 19(a)(1).

Following a preliminary review of the parties' submissions on August 27, 2025, the Court ordered the parties to file simultaneous briefs addressing the interplay between state law claims, the OCSLA, 42 U.S.C. § 1331, *et seq*., and *Parker Drilling Management Services Ltd. v. Newton*, 587 U.S. 601 (2019). (ECF No. 24.) The parties filed responsive briefs on September 19, 2025. (ECF Nos. 25, 27.)

## II.     SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the issue in dispute exceeds a value of $75,000. Additionally, OCSLA confers jurisdiction on U.S. district courts over all cases and controversies related to operations conducted on the OCS. *See* 43 U.S.C. § 1349(b)(1).

## III.     LEGAL STANDARD

A district court may grant a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotations omitted). Thus, to survive a motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Twombly,* 550 U.S. at 570. A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). The court may, however, ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV.    **DISCUSSION**

Atlantic Shores argues that Plaintiffs' claims, which rely on violations of state and municipal law to challenge the project, are preempted by OCSLA, a federal statute. (Moving Br. at 10.) Atlantic Shores further argues that Plaintiffs fail to state a claim under state law or local ordinance because the project is located beyond each municipality's respective boundary. (Moving Br. at 23.) Lastly, Atlantic Shores argues that the Court should order Plaintiffs to join entities that also hold an interest in the renewable energy lease as necessary parties to the case. (Moving Br. at 33.) The Court will first address the issue of preemption.

OCSLA authorizes the Secretary of the Interior, through BOEM, to issue leases, easements, or rights-of-way for offshore renewable energy development. 43 U.S.C. § 1337(p)(1)(C). "Before issuing an offshore lease, BOEM must coordinate and consult with relevant [f]ederal agencies," and "with the consultation requirements of other federal environmental statutes." *Nantucket Residents Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*, 100 F.4th 1, 8 (1st Cir. 2024).

BOEM must also "approve a site assessment plan and a construction and operations plan." *Id.* "The construction and operations plan must describe 'all planned facilities that [the lessee] will construct and use,' as well as 'all proposed activities including [the lessee's] proposed construction activities, commercial operations, and conceptual decommissioning plans.'" *Id.* (citing 30 C.F.R. § 585.620(a)-(b)). BOEM can accept, reject, or accept with modifications a lessee's site assessment or construction and operations plan, 30 C.F.R. §§ 585.613, 585.628, and must analyze the potential environmental impacts of the plans, *id.* §§ 585.613, 585.620(c).

Notably, OCSLA grants the federal government complete "jurisdiction, control, and power of disposition" over the OCS, "while states have no interest in or jurisdiction over it." *Taylor Energy Co. LLC v. United States*, 975 F.3d 1303, 1305 (Fed. Cir. 2020). Therefore, under OCSLA, "all law on the [OCS] is federal law," and state law does not "appl[y] of its own force." *Parker Drilling*, 587 U.S. at 604, 610. OCSLA adopts state laws "[t]o the extent that they are applicable and not inconsistent with other federal law." *Id.* at 609 (citing 42 U.S.C. § 1333(a)(2)(A)) (internal quotations omitted). Adjacent states' laws can be "applicable and not inconsistent with federal law . . . only if federal law does not address the relevant issue." *Id.* "Because federal law is the only law on the OCS, and there has never been overlapping state and federal jurisdiction there," the question in the OCSLA context therefore is "whether federal law has already addressed the relevant issue." *Id.* "[I]f so, state law addressing the same issue would necessarily be inconsistent with existing federal law and cannot be adopted as surrogate federal law." *Id.* at 609–610.

Prior to the Supreme Court's decision in *Parker Drilling*, federal courts had consistently held that state law cannot be applied to the OCS where a plaintiff attempts to wield state law to enjoin a federally permitted activity. This is because the state law would then be inconsistent with federal law. For example, in *Ten Taxpayer Citizens Group v. Cape Wind Associates, LLC*, 373

6

F.3d 183 (1st Cir. 2004), a case decided before *Parker Drilling*, a group of objectors to a proposed offshore wind facility sought to enjoin construction of a data collection structure. *Id.* at 185–87. Although the developer had obtained a federal permit from the U.S. Army Corps of Engineers, the objectors insisted that the developer was also required to obtain a permit from the state of Massachusetts. *Id.* The First Circuit affirmed the dismissal of the objectors' complaint, holding that the developer did not need a state permit to move forward. *Id.* Because OCSLA "establishes nationwide rules for the leasing and development of natural resources in the seabed outside of state territory" and is "sweeping" in nature, the OCSLA "leaves no room for states to require licenses or permits for the erection of structures on the seabed on the [OCS]." *Id.* at 188, 196–97. Notably, the First Circuit explained the unreasonable effect of the objectors' request: requiring a state permit in addition to a federal permit "would effectively grant state governments a veto power over the disposition of the national seabed"—a "result [that] is fundamentally inconsistent with the OCSLA." *Id.* at 196–97.

In *Parker Drilling*, the Supreme Court explained the meaning of the phrase, "to the extent that they are applicable and not inconsistent with other federal law," under § 1333(a)(2)(A). 587 U.S. at 607. The Supreme Court concluded that "state laws can be 'applicable and not inconsistent' with federal law under § 1333(a)(2)(A) only if federal law does not address the relevant issue." *Id.* at 609. The Supreme Corut noted that OCSLA "extends all federal law to the OCS, and instead of also extending state law writ large, it borrows only certain state laws." *Id.* at 610. The Court also explained that "[g]iven the primacy of federal law on the OCS and the limited role of state law, it would make little sense to treat the OCS as a mere extension of the adjacent State." *Id.*

After the Supreme Court's decision in *Parker Drilling*, the U.S. District Court for the District of South Carolina decided *S.C. Coastal Conservation League v. Ross*, Civ. No. 18-3326,

7

2020 WL 13065446 (D.S.C. Feb. 18, 2020). *S.C. Coastal* mirrors the facts of the case currently before this Court. In *S.C. Coastal*, the State of South Carolina sought to halt seismic air gun surveys for oil and gas development on the OCS by asserting state common law nuisance and trespass claims. *Id.* at *8–9. The district court denied South Carolina's request to enjoin the surveying activities, explaining that "it is apparent that the OCSLA establishes the law of the OCS and addresses issues regarding the regulation of the OCS." *Id.* at *4. Thus, applying *Parker Drilling*, the district court held that South Carolina could not essentially preempt federal authority through state common law claims because the claims pertained to areas already addressed by federal statutory law—specifically, the OCSLA. *Id.*

Here, consistent with *Parker Drilling*, the Court must also determine whether the state and municipal law that form the basis of Plaintiffs' claims are "applicable and not inconsistent" with the OCSLA. 587 U.S. at 609–10. To reiterate, Plaintiffs allege a private nuisance claim and violations of New Jersey's Municipal Land Use Law and the local ordinances of Beach Haven, Long Beach Township, and the City of Brigantine.

In this case, there is no gap in the federal law's coverage. Congress has explicitly authorized the Department of the Interior to lease the OCS for offshore wind development. 43 U.S.C. § 1337(p)(1)(C). The OCSLA addresses the impacts of the construction and operation of offshore wind projects on the OCS, as it requires the Secretary of the Interior to "ensure that any activity . . . is carried out in a manner that provides for . . . safety . . . and protection of the environment." *See id.* at § 1337(p)(4)(A)–(B); 43 U.S.C. § 1332(1). Additionally, before an entity can generate wind energy on the OCS, it must go through a rigorous approval process with BOEM. *See* 30 C.F.R. § 585.620(c). During this approval process, the entity must demonstrate that its operations will "not cause undue harm or damage to natural resources; life (including human and

wildlife); property; [or] the marine, coastal, or human environment . . . ." 30 C.F.R. § 585.621(e). Furthermore, the federal government must consider the "reasonably foreseeable environmental effects of the proposed agency action" for each action that would significantly affect the quality of the human environment.  42 U.S.C. § 4332(C)(i).  "Reasonably foreseeable environmental effects" include noise.  *See e.g., Protect our Communities Found. v. Jewell*, Civ. No. 13-575, 2014 WL 1364453, at *8 (S.D. Cal. Mar. 25, 2014), *aff'd* 825 F.3d 571 (9th Cir. 2016) (an Environmental Impact Statement must contain a reasonably thorough discussion of an action's environmental consequences, including noise impacts).  Thus, there is no gap for state law to step into to regulate noise related to construction and operation on the OCS.  Significant federal law and policy already exist to address the issue, and any application of state law or regulation would be inconsistent with federal law.  Accordingly, the Court finds that Plaintiffs' claims are preempted by federal law.[3]

## V.      CONCLUSION

For the reasons stated above, the Court will **GRANT** Atlantic Shores' Motion to Dismiss. The Complaint will be **DISMISSED WITH PREJUDICE**.  An appropriate Order will follow.


Date: April 29, 2026

s/ Zahid N. Quraishi

**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[3] Given the Court's conclusion that Plaintiffs' claims must be dismissed with prejudice as preempted, it does not reach Plaintiffs' alternative joinder argument.

9